UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

| | |
|---|---|
| **CARLIN ROBBINS and REBECCA LUTZ,** )   ) | |
| **Plaintiff** ) ) | **CIVIL ACTION NO. 5:15-71** |
| **v.** ) ) | |
| ) | **OPINION AND ORDER** |
| **NEW CINGULAR WIRELESS PCS, LLC,** ) **d/b/a AT&T MOBILITY** ) ) | |
| **Defendant** ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the defendant's motion to dismiss (DE 7). For the following reasons, the motion will be granted.

**I.     Background**

The defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("AT&T) seeks to construct a 125-foot cellular antenna tower at 302 Southland Drive in Lexington, Kentucky. (DE 1-4, Complaint ¶ 17.) It applied for permission to do so with the Lexington-Fayette Urban County Government ("LFUCG") Planning Commission and the commission granted the application on December 11, 2014. (DE 1-4, Complaint ¶ 18.) The plaintiffs, who reside near the site of the proposed tower, appealed the commission's decision to the Fayette County Circuit Court. (DE 1-4, Complaint ¶ 19.) The appeal was dismissed because the plaintiffs failed to name the property owners as required by KRS 100.347(4), the Kentucky state statute governing appeals of final actions by a planning commission. (DE 7-3, Order.)

While their appeal was pending, the plaintiffs filed this civil action asserting state-law tort claims of negligence, negligence per se, nuisance, and gross negligence. AT&T moves to dismiss all claims against it.

## II. Standard of Review

The plaintiffs assert that the Court should treat AT&T's motion to dismiss as a motion for summary judgment because, with its motion, AT&T submits the plaintiffs' state-court complaint by which they attempted to appeal the planning commission's approval of the tower and the state-court's opinion and order dismissing the appeal.

It is true that, "as a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) abrogated on other grounds by *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); Fed. R. Civ. P. 21(d). There is an exception to this rule, however, for public records. *Id.* Accordingly, the Court may consider the state-court appeal and the order dismissing it.

## III. Analysis

**A. Claims based on damages from RF emissions are preempted.**

The plaintiffs' complaint is primarily based on the negative health effects that they allege can result from exposure to a cell tower's radio-frequency (RF) emissions. They seek to certify a class of individuals living within 1640 feet (500 meters) of the proposed tower. In support of the proposed class, the plaintiffs assert that studies show "increased prevalence of adverse neurobehavioral symptoms or

cancer in populations living at distances [less than] 500 [meters] (1,640 feet) from cell phone towers." (DE 1-4, Complaint, ¶ 25.)

Any claim based on alleged damages from the tower's RF emissions is, however, preempted and must be dismissed.

The FCC has exclusive jurisdiction over "technical matters associated with the transmission of radio signals. *Broyde v. Gotham Tower, Inc.*, 13 F.3d 944, 997 (6th Cir. 1994). The Telecommunications Act of 1996 (TCA) expressly prohibits state and local governments or any instrumentality thereof from regulating the "placement, construction, and modification of personal wireless services facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

The FCC has set maximum permissible exposure limits for RF emissions. 47 C.F.R. § 1.1310. The Sixth Circuit has ruled that there is an "irreconcilable conflict between the FCC's exercise of exclusive jurisdiction over the regulation of radio frequency interference and the imposition of common law standards in a damages action." *Broyde*, 13 F.3d at 997. *See also Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1053 (C.D. Cal. 2008) (dismissing state-law tort claims and stating that "[t]o allow state law challenges to the judgment of Congress and the FCC with respect to allowable levels of RF emissions would interfere with the goal of national uniformity in telecommunications policy."); *Stanley v. Amalithone*, 94 A.D.3d 140, 146 (N.Y. App. Div. 2012) ("all of plaintiffs' claims are premised on the notion that the RF emissions. . . are unsafe or dangerous. Entertaining plaintiffs' claims would require us to second guess the FCC's standards and engage in our own form of judicial regulation of RF emissions.")

3

The plaintiffs do not allege in their complaint that the RF emissions from the proposed tower will exceed the FCC's permissible limits. In their response brief they concede that they do not know what the RF emissions from the tower will be. They argue that "[u]ntil those facts are developed," its claims based on the RF emissions should not be dismissed. (DE 13, Response at 9.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007) (internal citations omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id.* at 570.

The plaintiffs have not pleaded any facts indicating that the tower's RF emissions will exceed the FCC's standards. Accordingly, all of the plaintiffs' claims based on damages from RF emissions must be dismissed.

### B. Plaintiffs cannot assert a claim based on the design or siting of the proposed tower.

In addition to health damages from RF emissions, the plaintiffs also assert that the proposed tower will damage their health and wellbeing because of its noise, light, and aesthetic pollution. (DE 13, Response at 8, 10). They further assert that the "proposed tower will interfere with the use and enjoyment of Plaintiffs' properties resulting in the diminution of the fair market value" of their properties. (DE 1-4, Complaint, Count IV & V; DE 13, Response at 2, 15.)

4

The tower is not yet constructed and plaintiffs' response to the motion to dismiss makes clear that all of their claims are based on AT&T's "design and siting of the proposed cell tower." (DE 13, Response at 8, 15, 16, 19.)

Regarding the design of the proposed tower, in their complaint, the plaintiffs assert that, despite the recommendation of the planning commission staff that AT&T should employ an "alternative tower design," (DE 1-4, Complaint, ¶ 22) the commission "determined that no alternative design would be required." (DE 1-4, Complaint, ¶18.) The plaintiffs assert that "[a]n architectural feature/design that would appear to be part of the Temple building" or other buildings in the area "would minimize the impact of what many surrounding property owners believe would be a negative, overwhelming presence in the neighborhood." (DE 1-4, Complaint ¶ 22.) The plaintiffs complain that the tower "will dominate the view shed from residential properties and emit harmful light, noise, and radio and microwaves." (DE 1-4, Complaint ¶ 17.)

As to the tower's proposed location, the plaintiffs complain that the tower will be located 80 feet from residential properties. (DE 1-4, Complaint ¶ 21.) They allege that the tower could cause a decrease in neighboring property values. (DE 1-4, Complaint ¶ 24.)

The LFUCG planning commission, however, specifically approved of the proposed location and design for the tower when it approved AT&T's application. Article 25, the local zoning ordinance that governs the placement of communications towers is concerned primarily with a tower's design and location. It is intended to:

> provide for cellular telecommunication towers in appropriate locations throughout the community at sites that provide adequate cellular telecommunication service while protecting the public, preserving the character and value of surrounding property, and protecting the view from residential areas.

5

Zoning Ordinances, Art. 25, http://lexingtonky.gov/. The ordinance specifically regulates tower location and sets forth design standards. Zoning Ordinances, Arts. 25-4, 25-5, 25-6, http://lexingtonky.gov/. The ordinance makes clear that, in approving AT&T's application, the LFUCG approved of the tower site and design. Zoning Ordinances, Art. 25-9(c), 25-9(d)(1), http://lexingtonky.gov/.

Because the tower has not yet been constructed, the plaintiffs assert no claims based on any damages that the tower has *actually* caused. Instead, their complaint is really with the commission's approval of the tower. They assert that the approval has already damaged their property values and that the proposed tower violates certain unnamed sections of the local zoning ordinance. (DE 13, Response at 2.)

Under Kentucky's statutes, any person injured by a planning commission's final action should appeal the action to the state Circuit Court. KRS 100.347(2). The statute requires that such an appeal must be taken within 30 days of the final action. It further provides that "[a]ll final actions which have not been appealed within thirty (30) days *shall not be subject to judicial review*." Ky. Rev. Stat. Ann. § 100.347(2) (emphasis added). Again, the plaintiffs attempted to obtain judicial review of the planning commission's approval of the application but failed to name the property owner and, thus, their appeal was dismissed.

Because complaints about the tower design and location that the commission approved were within the scope of review of KRS 100.347, the plaintiffs cannot bring a separate action seeking judicial review of those very issues. *Warren Cty. Citizens for Managed Growth, Inc. v. Bd. of Comm'rs of City of Bowling Green*, 207 S.W.3d 7, 17 (Ky. Ct. App. 2006). "[W]hen the right of appeal or the trial court's jurisdiction is

6

codified as a statutory procedure, as it is in KRS 100.347, then the parties are required to strictly follow those procedures." *Triad Dev./Alta Glyne, Inc. v. Gellhaus*, 150 S.W.3d 43, 47 (Ky. 2004). *See also Payne v. Fairfield Hills Hospital*, 215 Conn. 675, 679 (Conn. 1990) ("[A] party who has a statutory right of appeal from a decision of an administrative agency may not bring an independent action to test the very issues that the statutory appeal was designed to test.")

### C. Plaintiffs have failed to state any claim based on the proposed tower design and location.

Furthermore, even if the plaintiffs could assert a claim based on the design and location of the proposed tower, the plaintiffs have not alleged any viable tort claims.

"[I]t is elemental that in order to state a cause of action for negligence a plaintiff must show that he or she was owed a duty by the defendant; that there was a breach of the duty; that there was an injury; and that there was a causal connection." *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. Ct. App. 1997). AT&T sought and obtained the planning commission's approval of the design and location of the tower as it is required to do by law. The planning commission's approval means that the proposed tower and site meet the requirements of the local ordinance. There is no allegation that AT&T failed to comply with FCC requirements. Nor is there any allegation that AT&T failed to comply with any other applicable standard of care with regard to the design or location of the proposed tower.

In response to the motion to dismiss, the plaintiffs state only that the defendants breached the duty of care "as a result of their negligent design and siting of the cell tower despite strong and vocal opposition by the surrounding residential

7

property owners." (DE 13, Response at 16.) These are conclusory allegations that cannot defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiffs argue that the Court should allow them to pursue their negligence claim "in anticipation of the future harm that will be suffered." (DE 13, Response, at 17.) A negligence claim cannot be based on the speculation that the defendant may one day act negligently or that one day the plaintiffs may suffer harm.

As to gross negligence, this claim requires "something more than the failure to exercise slight care. We have stated that there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001). Gross negligence requires "first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others." *Id.* (quotations and citation omitted). Because the plaintiffs have failed to plead sufficient facts to allege negligence, their gross negligence claim necessarily fails.

As to negligence per se, under Kentucky law, "the violation of a statute, ordinance, or administrative regulation, is a breach which may, in the proper circumstance, constitute negligence per se." *Alderman v.* Bradley, 957 S.W.2d 264, 267 (Ky. Ct. App. 1997). In their complaint, the plaintiffs state only that AT&T has violated "certain statutes, regulations, and ordinances." (DE 1-4, Complaint, Count II ¶ 7.) Neither in their complaint nor in their response do the plaintiffs name or identify any particular statute, regulation, or ordinance that AT&T has violated.

8

Again, "a formulaic recitation of the elements of a cause of action" is not sufficient to defeat a motion to dismiss. *Twombly*, 550 U.S. at 555.

The plaintiffs also assert a nuisance claim against AT&T. For this claim they argue that the tower will cause "excessive noise and light and will have a significant adverse impact on the health and well-being of neighboring residents" and that, as a result, the fair market value of their property has been materially reduced. (DE 1-4, Complaint, Count IV, ¶¶ 20, 23.)

A nuisance "arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." *Smith v. Carbide & Chems. Corp.*, 507 F.3d 372, 379 (6th Cir.2007) (quoting *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (1950)). The plaintiffs cannot allege that AT&T has undertaken unreasonable, unwarranted or unlawful actions with regard to the tower. As discussed, in compliance with the local laws, it obtained the required approvals to construct the tower. The plaintiffs have not identified any statute, rule, or regulation that AT&T has violated or alleged that the tower location or design has violated any other applicable standard of care.

The plaintiffs argue that their claim is that, after construction, the cell tower *will* represent an unreasonable or unwarranted use of the land. (DE 13, Response at 15.) For any such claim, the plaintiffs must allege that "the proposed construction or the use to be made of the property will be a nuisance per se, or that a nuisance must *necessarily* result from the contemplated act or thing." *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (1950) (emphasis added). Plaintiffs do not allege any such facts either in their complaint or in their response. Plaintiffs have alleged they will be harmed by the noise, lighting, and RF emissions from the tower. The court cannot

9

n/a
n/a

consider the RF emissions. The plaintiffs have not alleged that the lighting or noise emanating from the proposed tower will necessarily be unreasonable or unwarranted. Again, the tower design and location meet the requirements of all applicable regulations and have received the necessary approvals. Thus, the plaintiffs have not alleged sufficient facts to permit an inference that the tower "will of necessity constitute such material annoyance, inconvenience or discomfort as to constitute an invasion of [their] rights." *Id*. at 533.

Accordingly, the plaintiffs have failed to state a claim for negligence, gross negligence, negligence per se, or nuisance.

### D. Plaintiffs have not appropriately moved to amend their complaint.

In their response, the plaintiffs request the Court permit them to amend their complaint rather than dismiss it. This request is contained within the plaintiffs' response. (DE 13, Response at 4.) The plaintiffs do not tender an amended complaint or state what amendments they would make to cure any deficiencies.

"[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (citation omitted). "A request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Id*. (quotations and citation omitted). In this situation, AT&T is "entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs are not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.*" *Id*. (citation

10

omitted). Further, no amendments could completely cure the complaint's deficiencies.

## IV. Conclusion

For all these reasons, the Court hereby ORDERS that AT&T's motion to dismiss (DE 7) is GRANTED and plaintiffs' complaint is DISMISSED.

Dated March 18, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY